IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRENT P. LOPEZ and ROSE A. ROMERO, | 8:16CV98 |
| Plaintiffs, | |
| v. | MEMORANDUM AND ORDER |
| DELICIA KELLY, Child Protective Services (CPS); JENNIFER SAGESER, The Nebraska Families Collaborative (NFC); and DEBRA TIGHE-DOLAN, Douglas County, | |
| Defendants. | |

Plaintiffs, Brent P. Lopez ("Lopez") and Rose A. Romero ("Romero") filed this case on February 29, 2016. They have been granted leave to proceed in forma pauperis. The court now conducts an initial review of their complaint to determine whether summary dismissal is appropriate under [28 U.S.C. § 1915(e)(2)](#).

## I. SUMMARY OF COMPLAINT

Lopez and Romero are husband and wife. They allege, among other things, that: (1) Romero gave birth to the couple's son, Izreal, on August 22, 2015, at Methodist Women's Hospital in Omaha, Nebraska; (2) on August 23rd, Plaintiffs contacted Child Protective Services ("CPS") with concerns they had about hospital employees; (3) on August 24th, Defendant Delicia Kelly ("Kelly") and another CPS employee visited Plaintiffs and told them that hospital employees reported that Izreal had tested positive for benzodiazepines, a controlled substance, and that they feared Plaintiffs would attempt to remove Izreal from the neonatal intensive care unit ("NICU"); (4) on August 25th, Defendant Debra Tighe-Dolan ("Tighe-Dolan"), a deputy county attorney, filed an ex parte motion in the Separate Juvenile Court for Douglas County,

Nebraska, supported by an affidavit signed by Kelly, requesting that Izreal and Plaintiffs' two other children, Tai and Lyon, ages 4 and 6, be placed in the temporary custody of the Nebraska Department of Health and Human Services; (5) Kelly "misrepresented evidence, used baseless accusations and [made] false statements" in her affidavit which resulted in the juvenile court judge granting the ex parte motion; (7) on August 25th, Romero was barred from the hospital while Izreal was kept in the NICU, and Tai and Lyon were removed from Plaintiff's home and placed in the custody of Romero's parents; (8) on August 31st, Kelly interrogated Lyon at his elementary school without parental knowledge, presence or consent; (9) on September 1st, Defendant Jennifer Sageser ("Sageser") of Nebraska Families Collaborative ("NFC") coerced Plaintiffs to sign release forms for their personal medical records by telling them that "If you do not sign this you will not get your kids back"; (10) Plaintiffs were subjected to random drug tests, parenting classes, and had to complete chemical dependency and psychological evaluations; (11) CPS ignored drug test results, evaluation results, child interrogation results, and medical records that contradicted and disproved the accusations against Plaintiffs; (12) on October 23rd, Tighe-Dolan offered to return the children to Plaintiffs if they would "plead guilty" to wanting to take lzreal out the hospital against medical advice, but Plaintiffs refused the offer; (13) at a hearing on October 28th, hospital records and testimony from a doctor showed that Izreal had not tested positive for benzodiazepines and supported Plaintiffs' version of events, while no evidence of any wrongdoing by Plaintiffs was presented; (14) when the hearing was continued to November 18th, the children were not returned to Plaintiffs' custody, and Romero was not permitted to care for them at her parents' house even though her mother was ill, because Tighe-Dolan objected; (15) on November 4th, the juvenile court case was dismissed upon Tighe-Dolan's motion and the court ordered that custody of the children be returned to Plaintiffs; (16) on November 17th, Sageser came to Plaintiffs' residence claiming she needed to do a final home inspection and then asked questions for about 20 minutes; and (17) as a result of Defendants' actions, Plaintiffs have been traumatized and require medical treatment for continuing depression and anxiety, their reputations have been injured, and Romero lost her job.

## II.  STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. § 1915(e).  The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'"  *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).  However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties."  *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Plaintiffs claim their civil rights were violated and seek to recover damages.  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## III. DISCUSSION

Even assuming that Sageser's conduct was "fairly attributable to the state," so that she can be sued as a state actor under § 1983, *see Filarsky v. Delia*, 132 S. Ct. 1657, 1661 (2012), the facts alleged are not sufficient to state a claim for relief. She is only alleged to have obtained signed releases for Plaintiffs' medical records and to have conducted a home inspection and interview. There is no indication that she violated any right secured by the Constitution or laws of the United States.

Tighe-Dolan's alleged actions all relate directly to her prosecution of the juvenile court case. "Prosecutors are entitled to absolute immunity from civil liability under § 1983 when they are engaged in prosecutorial functions that are 'intimately associated with the judicial process.'" *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) (quoting *Anderson v. Larson,* 327 F.3d 762, 768 (8th Cir.2003))."Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process." *Brodnicki v. City of Omaha,* 75 F.3d 1261, 1266 (8th Cir.1996). "[A]ctions connected with initiation of prosecution, even if those actions are patently improper" are immunized. *Schenk*, 461 F.3d at 1046 (quoting *Williams v. Hartje,* 827 F.2d 1203, 1208 (8th Cir. 1987)). Because Tighe-Dolan is not alleged to have engaged in any non-prosecutorial activities, she is absolutely immune from suit.

Kelly's conduct in allegedly preparing a false affidavit that led to the children being removed from Plaintiffs' custody could constitute a violation of their rights to substantive due process as guaranteed by the Fourteenth Amendment. Parents have a protected liberty interest in the custody, care, and management of their children. *See King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997).

To adequately plead a substantive due process claim, however, Plaintiffs must allege facts showing that Kelly's actions were "shocking to the contemporary

-4-

conscience." *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010) (quoting *Flowers v. City of Minneapolis,* 478 F.3d 869, 873 (8th Cir.2007)). This is a high standard, as "[s]ubstantive due process is concerned with violations of personal rights ... so severe ... so disproportionate to the need presented, and ... so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience." *Id.* (quoting *Golden v. Anders*, 324 F.3d 650, 652-53 (8th Cir. 2003)). Plaintiffs' general allegation that Kelly "misrepresented evidence, used baseless accusations and false statements in order to obtain a signature by a Judge to terminate parental rights" does not provide Kelly with fair notice of the nature of Plaintiffs' claims and the grounds upon which those claims rest, nor does it plausibly establish their entitlement to any relief.

Also, Kelly apparently acted as an employee of the Children and Family Services (formerly Child Protective Services) division of the Nebraska Department of Health and Human Services ("DHHS"). Because the complaint does not "expressly and unambiguously" state that Kelly is sued personally, the court must assume that she is sued only in her official capacity. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). The Eleventh Amendment to the United States Constitution provides states, state agencies, and state officials acting in their official capacities with immunity from suits brought by citizens of other states and from suits brought by a state's own citizens. *See Hadley v. North Arkansas Cmty. Technical Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996).

## *IV. CONCLUSION*

On the court's own motion, Plaintiffs will be granted leave to file an amended complaint that states a claim upon which relief can be granted. In order to state an actionable substantive due process claim against Kelly, Plaintiffs must allege that she is being sued in her individual capacity and state sufficient facts to satisfy the "conscience shocking" pleading standard. The complaint should specifically identify

which statements in Kelly's affidavit are contested by Plaintiffs, and should explain why Kelly knew or should have known the statements were false. Accordingly,

IT IS ORDERED:

1. Plaintiffs will have 30 days in which to file an amended complaint that states a claim upon which relief can be granted.

2. Failure to file an amended complaint in accordance with this Memorandum and Order will result in dismissal of this action without further notice.

3. The clerk's office is directed to set a pro se case management deadline using the following text: May 16, 2016: check for second amended complaint.

DATED this 15th day of April, 2016.

BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge